Charles D. Marshall (State Bar No. 236444)
**MARSHALL LAW FIRM**
2121 N. California Blvd., Suite 290
Walnut Creek, CA  92596
Telephone: (925) 575-7105
Facsimile: (855) 575-7105
cdm@marshall-law-firm.com

Attorney for Plaintiff
RON DAVIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON DAVIS, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VISA, Inc., a Delaware corporation,<br><br>Defendant. | Case No. 3:13-cv-5125-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT**<br><br>Hearing Date:  03/20/15<br>Hearing Time:  10:00 a.m.<br>Judge:  Hon. Charles R. Breyer<br>Trial Date:  None Set |

**TABLE OF CONTENTS**

I.  INTRODUCTION ……………………………………………………………… 2

II. BACKGROUND …………………………………………………………….. 3

    A.  The Litigation ……………………………………………………………… 3

    B.  Terms of The Proposed Settlement ………………………………………….. 4

        1.  VISA Will Allow Claims Against Zipcar Rentals Under The Benefit ……………………………………………. 5

        2.  VISA Will Pay Class Member 100% Of Benefit Claims Previously Denied …………………………………… 5

        3.  The Notice and Claims Process ………………………… ……………. 7

        4.  Mutual Release ……………………………………………………….  8

III. ARGUMENT ……………………………………………………………………  8

    A.  The Court Should Grant Final Approval Of The Settlement ………………….  8

        1.  The Strength of Plaintiff's Case ……………………………………….. 10

        2.  The Risk, Expense, Complexity, and Likely Duration Of Further Litigation ……………………………………… 11

        3.  The Risk Of Maintaining Class Action Status Through Trial ………….. 12

        4.  The Amount Offered In Settlement …………………………………….. 12

        5.  The Extent Of Discovery Completed And The Stage Of Proceedings …. 13

        6.  The Experience And Views Of Counsel ……………………………….. 14

        7.  The Presence Of A Governmental Participant ………………………….. 14

        8.  The Reaction Of The Class Members To The Proposed Settlement ….  15

IV. CONCLUSION …………………………………………………………………  161

# TABLE OF AUTHORITIES

**Federal Cases**

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
   213 F.3d 454 (9th Cir. 2000) ............................................................................................... 13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) . 11, 15

*Gribble v. Cool Transps. Inc.*,
   No. CV 06-04683 GAF (SHx) 2008 U.S. Dist. Lexis 115560 (C.D. Cal. Dec. 15, 2008) ...... 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 8, 9

*In re TD Ameritrade Accountholder Litig.*,
   266 F.R.D. 418 (N.D. Cal. 2009) ........................................................................................ 9

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) ...................................................................................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 15

*Officers for Justice v. Civil Serv. Com.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................ 10

*Rodriguez v. W. Publ'g*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................ 8, 13

**Other**

*Sav-On Drug Stores, Inc. v. Superior Court*,
   34 Cal. 4th 319 (2004) ...................................................................................................... 11

**Federal Statutes**

28 U.S.C. § 1715 (2006) ....................................................................................................... 14, 15

Fed. R. Civ. P. 23(e)(2) ............................................................................................................... 8

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 20, 2015, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 6, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Ron Davis will move for an order granting final approval of the Parties' proposed class settlement.

Plaintiff's motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Charles D. Marshall In Support of Motion For Final Approval, the declaration of Charles D. Marshall In Support Of Preliminary Approval (previously submitted on November 7, 2014) and such other submissions or arguments that may be presented before or at the hearing on this motion and as the Court may consider.

DATED: March 6, 2015

**MARSHALL LAW FIRM**

By: */s/ Charles D. Marshall* .
     Charles D. Marshall

Charles D. Marshall (State Bar No. 236444)
**MARSHALL LAW FIRM**
2121 N. California Blvd., Suite 290
Walnut Creek, CA  92596
Telephone: (925) 575-7105
Facsimile: (855) 575-7105
cdm@marshall-law-firm.com

Attorney for Plaintiff RON DAVIS and the CLASS

1

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **INTRODUCTION**

The Court previously considered and preliminarily approved the Parties' proposed Class Action Settlement Agreement [Dkt. No. 54.1]. Class Members have been notified of the Settlement as directed by the Court and had until February 27, 2015, to object, otherwise comment, or request exclusion from the settlement. No such objections, comments or exclusions were received. By this motion, Plaintiff requests that the Court conduct a final review of the Settlement and approve the Settlement as a fair, reasonable, and adequate resolution of this lawsuit.

In a case where VISA denied its "Auto Rental Collision Damage Waiver—Personal" benefit (the "Benefit") to cardholders who rented Zipcar vehicles, the Settlement requires that VISA pay Class Members 100% of any denied Benefit, as well as offer the Benefit to all qualified cardholders--which VISA did so prior to approval, starting November 6, 2014. VISA retains the right to take action to exclude Zipcar rentals from the Benefit after April 1, 2015, but if it chooses to do so, the Settlement Agreement requires that VISA provide clear notice to consumers of the change in policy. Of course VISA may also elect to continue accepting Zipcar claims under the Benefit as it currently does under the Settlement. The Settlement thus represents a substantial monetary recovery for Class Members, as well as excellent relief for current and future cardholders in that they will either be entitled to the Benefit for Zipcar rentals, or will receive clear notice if Zipcar claims are excluded.

//
//
//
//
//

2

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

## II. BACKGROUND

### A. THE LITIGATION

VISA attracts consumers to VISA branded credit cards over competing cards by offering a host of benefits. Pertinent to Plaintiff's Second Amended Complaint ("SAC") is the "Auto Rental Collision Damage Waiver – Personal," hereinafter referred as the "Benefit." VISA offers the Benefit to all VISA standard, VISA Rewards and VISA Premium Rewards credit cardholders. VISA's Benefit promises to provide "[c]ollision and theft coverage on auto rentals," however, Plaintiff contends that VISA's Benefit agreement does not disclose to cardholders that VISA has an internal policy to exclude from coverage rentals made through Zipcar.[1]

On November 4, 2013, Plaintiff filed a Complaint against VISA in the U.S. District Court for the Northern District of California alleging that the failure to cover Zipcar rentals under the Benefit constituted (1) violations of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) breach of contract , (4) breach of the implied covenant of good faith and fair dealing, as well as a claim for (5) declaratory relief. On December 16, 2013, Plaintiff filed a First Amended Complaint adding a claim for damages under the CLRA count. On February 28, 2014, in response to a motion to dismiss filed by VISA, Plaintiff filed a Second Amended Complaint, alleging only claims under the fraud and unfair prongs of the UCL, for breach of contract and for breach of the duty of good faith and fair dealing.

On April 18, 2014, the Court granted in part and denied in part VISA's Motion to Dismiss,

---

[1] Plaintiff contends that Zipcar—who is not a party to this lawsuit—is a vehicle rental company. Plaintiff alleges that customers of Zipcar do not hold or share title to any of the vehicles in Zipcar's fleet, nor do they have any rights to the cars beyond the ability to use them at the times and for the duration agreed to by Zipcar. Plaintiff further alleges that while Zipcar may market itself as a "car sharing" service, Zipcar customers neither have, nor share, any ownership rights in the vehicles in Zipcar's fleet. Plaintiff alleges that for the purposes of the VISA's Benefit, there is no meaningful distinction between Zipcar and other rental services VISA considers covered by the Benefit.

1  dismissing claims under the fraud prong of the UCL, but allowing claims under the UCL unfair
2  prong to proceed, as well as the claims for breach of contract and breach of the covenant of good
3  faith and fair dealing. Prior to the ruling, the parties had begun discussions regarding the
4  underlying factual allegations and potential settlement options. On June 27, 2014, the parties
5  participated in a mediation with the Honorable Rebecca Westerfield (Retired).  Declaration of
6  Charles D. Marshall In Support of Motion for Preliminary Approval, filed on November 7, 2014
7  [Dkt. No. 54] ("Marshall Preliminary Approval Decl.") ¶ 2.  Prior and during the mediation, VISA
8  provided Plaintiff with vital information pertinent to the legitimacy and scope of Plaintiff's claims,
9  including screenshots showing VISA cardholders who had made claims against the Benefit  for
10 Zipcar rentals, dates and states where the claims were made, as well as disclosing the procedure
11 VISA undertook to identify these Class Members.  *Id.* ¶ 4.
12       Although VISA claims numerous potential defenses to the underlying allegations and the
13 basis for certifying the Class, in recognition of the risks of litigation and the certain, significant
14 costs of defending it, VISA agreed to a settlement providing valuable relief to the Class in the
15 form of a cash payment of 100% of the claimed benefit for each Class member. The settlement
16 also provides a valuable benefit going forward to consumers *outside* the class in that VISA agrees
17 it will no longer exclude Zipcar rentals from the Benefit unless it takes steps to make it clear to
18 consumers an intention to exclude Zipcars—i.e., if VISA does nothing, Zipcars will be covered by
19 the Benefit as a result of the settlement.

   **B.** **TERMS OF THE PROPOSED SETTLEMENT**

22       In exchange for a release of claims from Class Members, VISA agreed to undertake
23 several important remedial measures. First, VISA agreed to no longer exclude Zipcar rentals from
24 the Benefit, and started accepting such claims on November 6, 2014. The settlement obligates
25 VISA to accept such claims through April 1, 2015, after which VISA maintains the right, to
26 amend its Benefit Agreement or otherwise change its Benefit policy to expressly exclude Zipcar

rentals from the Benefit, so long as such action provides clarity to consumers. Even if VISA decides to exercise that right, the result will be greater clarity and transparency for consumers in the marketplace. Of course, VISA may also elect to do nothing and simply continue to allow Benefit claims for Zipcar rentals as provided for in the Settlement, as do several competitors. Ultimately, this measure benefits consumers far beyond the borders of the Class at issue. Second, VISA agreed to pay each Class Members who submits a valid claim 100% of the benefit to which they would have been entitled had the Zipcar exclusion not been applied—this means VISA is paying 100% of the loss to each class member.  Third, VISA agreed to pay for Plaintiff's reasonable attorney's fees and costs not to exceed $57,520.00, as well as a service award for Plaintiff Ron Davis not to exceed $2,000—attorney's fees and the service award are addressed in detail in Plaintiff's motion for attorney's fees and service award. [Dkt. N0. 59].

### 1. VISA Will Allow Claims Against Zipcar Rentals Under the Benefit

In the settlement of Plaintiff's and Class Member's claims, VISA agreed and began on November 6, 2014, to allow its cardholders to make claims against the Benefit for Zipcar rentals through at least April 1, 2015. Such claimants will be subject to the same claims procedure as all other rental customers, and will be paid for the same amounts and on the same basis.  Marshall Preliminary Approval Decl. Ex. 1, ¶ 2.2(a); see also id. *Ex.* 1-B, ¶ 5(B). After April 1, 2015, VISA will either continue to allow such claims under the benefit, or expressly exclude them by either amending the benefit agreement or by otherwise providing clear notice of such a policy change to cardholders.

### 2. VISA Will Pay Class Members 100% of Benefit Claims Previously Denied

The Settlement Agreement also provides that VISA will pay each Class Member identified in VISA's records 100% of the benefit which would have been available to them had the claim not

5

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

been denied under VISA's prior policy to exclude Zipcar transactions. Due to the passage of time, VISA agreed that Class members will not be required to submit the standard panoply of documents required under the Benefit Agreement to establish a claim. Instead, VISA agrees to treat the claims as valid upon certification by each Class Member on his or her claim form under penalty of perjury and absent clear evidence of fraud or prior payment of the claim by a third party, or discharge of the claim in bankruptcy. Marshall Preliminary Approval Decl. ¶ 6; see also Ex. 1, ¶ 2.1(b). Ex. 1-A and Ex. 1-B, ¶ 5(A).

The records of the company administering the Benefit for VISA identified 266 Class Members who submitted claims for Zipcar rentals and whose claims were denied based on the Zipcar exclusion. See Declaration of Charles D. Marshall in support of Motion for Final Approval of Class Action Settlement ("Marshall Final Approval Decl.") ¶ 5. As discussed in the SAC, because Zipcar provides mandatory insurance for its rentals, the Class Member claims are limited to the amount of the Zipcar insurance deductible. That deductible was set at $500 until October 2010 when it increased to $750. See Marshall Preliminary Approval Decl. ¶ 7. As a result, those amounts act as the ceiling for each of the Class Member's awards. For example, if a Class Member made a claim for $560 on February 10, 2011, that Class Member could submit a claim form and receive a payment from VISA of $560 as a result of this settlement. And if the claim at the time was for $750 or more, then they will receive the amount they would have been entitled to under the Benefit ($750 in this example). In other words, Class Members who submit claims will get 100% of the amounts that Plaintiff contends they should have been paid under the Benefit. For the 266 Class members, Plaintiff expects VISA will pay out over $160,000, or an average of over $650 per class member. Marshall Preliminary Approval Decl. ¶ 5.

//
//
//

### 3. The Notice and Claims Process

The Notice Program, as set forth in the Order Granting Preliminary Approval of Class Settlement dated December 15, 2014 [Dkt. No. 57] ("Preliminary Approval Order"), has been implemented by VISA and the Claims Administrator. See Marshall Final Approval Decl. ¶ 6. Class Counsel is informed that VISA will submit a declaration providing further detail as to the execution of the Notice Program prior to VISA's deadline to respond to this motion for final approval. *Id*. To date, with three months remaining to submit claims, at least 100—or nearly 40% of the class—have done so. In addition, Class Counsel committed to and has begun emailing and/or calling each individual class member to ensure that those who wish to participate in the settlement are aware of the requirements to do so and the claims deadline. *Id.* ¶¶ 7-9. In addition, VISA's counsel mailed notice to all appropriate federal and state officials as required by the Class Action Fairness Act ("CAFA"), and will submit a separate declaration attesting to the satisfaction of the CAFA requirements in a declaration submitted prior to the final approval hearing.

The process by which Class Members can submit a claim for reimbursement of the denied Benefit is designed specifically to impose minimal burden on Class Members. The claim form is a single page that was mailed and emailed to all VISA cardholders who were denied payment under VISA's Benefit based on the fact that they rented the subject vehicle from Zipcar. (*See* Settlement Agreement , Ex. A to Marshall Final Approval Decl.). The date and amount of each Class Member's Benefit claim as submitted to VISA is included in the mailed claim form, leaving Class members only to fill out their personal contact information and to sign an affirmation of the claim. (See, *id*.). A blank claim form, along with all other pertinent settlement documents, is also available on-line at http://www.marshall-law-firm.com/visa-zipcar-class-action-settlement.

By virtue of creating claim forms prepopulated with the date and amount each member claimed under the Benefit, VISA has pre-verified each Class Member's eligibility to recover under the Settlement Agreement, requiring the class member only to affirm that the information is accurate and that they have not been reimbursed from another source. If a Class Member chooses

7

1  to fill out the form available at www.marshall-law-firm.com instead of the prepopulated on

2  emailed to them, VISA assumes responsibility for verifying that class member's eligibility under

3  the Settlement Agreement.  If there is a disagreement as to eligibility, VISA must provide such

4  class members a reasonable opportunity to cure any deficiency in the claim. (See *id*., ¶¶ 6.3, 6.4).

5  Class members have until June 18, 2015, to make claims.

### 4. Mutual Release

8  In consideration for the class relief provided by VISA under the proposed settlement, Class

9  Members will release VISA from any and all claims that arise from or relate to (1) any damage to

10  a Zipcar, (2) the Benefit, (3) the marketing and advertising of the Benefit, (4) warranties,

11  representations, or omissions regarding or related to the Benefit, or (5) all claims brought, alleged,

12  argued, raised or asserted in this action. Likewise, VISA will release Plaintiff and Class Members

13  from any claims related to the litigation or settlement of this Action. (See *id*., ¶¶ 1.20 – 1.22).

### III. ARGUMENT

#### A. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

17  A proposed class action settlement may be approved if the Court—after allowing absent

18  class members an opportunity to be heard—finds that the settlement is "fair, reasonable, and

19  adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "the court's intrusion upon what

20  is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

21  limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

22  

23  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

24  taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g*, 563

25  F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

26  1998) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is

8

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

especially true in complex class action litigation . . .")).

The decision of whether to approve the parties' proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of clear abuse of discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998). The Ninth Circuit has, however, set forth a list of non-exclusive factors that a district court should balance in deciding whether to grant final approval, namely:

(1) The strength of plaintiff's case;
(2) The risk, expense, complexity, and likely duration of further litigation;
(3) The risk of maintaining class action status through the trial;
(4) The amount offered in settlement;
(5) The extent of discovery completed, and the stage of the proceedings;
(6) The experience and views of counsel;
(7) The presence of a governmental participant;
(8) The reaction of the Class Members to the proposed settlement.

*Id.* at 963 (referred to hereafter as the "*Hanlon* Factors").

"Basic to the process of deciding whether a proposed settlement is fair, reasonable and adequate is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *from Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). (brackets and ellipsis removed). The first four *Hanlon* Factors are designed to assist the Court in making this comparison. By evaluating the strength of the plaintiff's case; the risk, expense, complexity and delay associated with further proceedings; and the risk of maintaining class certification through trial, the Court can get a good idea of the value of the class members' claims. The Court can then evaluate the amount offered by the parties' proposed settlement in context to determine whether it provides fair compensation for those claims—or, stated another way, "whether the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) §21.61 (2004)). The remaining *Hanlon* Factors offer additional perspective on whether the amount offered by the settlement is fair, with the fifth factor designed to ensure that the parties and the Court have

9

sufficient information to intelligently assess the value of class members' claims, the sixth and eighth factors taking into account class counsel's and individual class members' opinions about the settlement, and the seventh factor accounting for the position or views of any governmental participant.

A thorough evaluation of the *Hanlon* Factors in this case shows that the proposed settlement provides excellent value to Class Members without the risk and delay associated with further litigation, and should be approved as a fair, adequate, and reasonable resolution of their claims against VISA.

### 1. The Strength of Plaintiff's Case

In many class action settlements, the parties expound on the weakness of the plaintiff's case to justify the compromise before the Court. Here, Plaintiff pressed through VISA's early efforts to dismiss, believes his case is relatively strong and believes that VISA is liable, at the very least, for a breach of its Benefit Agreement to cardholders. Even though Plaintiff believes he could establish liability were the case to go to trial, this settlement represents a 100% recovery for class members and, going forward, the case is hardly an easy win. Whether Zipcar qualifies as a rental agency under the terms of the Benefit agreement is a question which has not been definitively answered or addressed in any case. In the absence of prior decision or law, Plaintiff would face the hurdle of establishing that Zipcar is either a rental agency, or that there is no meaningful distinction between a Zipcar transaction and those with other car rental companies. VISA's early motion practice also previewed a series of arguments relating to how the Zipcar transaction was structured, with such arguments aimed to reduce the size of the class from that described in the Settlement Agreement, as well as to create individual issues for use in opposing certification altogether.

But, without reaching any ultimate conclusions, there is at least a fair likelihood that had the case would proceed through a liability and damages phase, Plaintiff and at least some class

10

members would have been entitled to a recovery for VISA's denial of their Benefit claims. *See Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (At the final approval stage, "[n]either the trial court nor [an appellate] court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). The strong possibility of at least partial success on liability at trial justifies robust settlement payments to class members, which is exactly what Class counsel negotiated here.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second *Hanlon* Factor recognizes that "[s]ettlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *27, *28 (N.D. Cal. Apr. 22, 2010) (quoting *Curtis-Bauer v. Morgan Stanley & Co*., 2008 U.S. Dist. LEXIS 85028, 2008 WL 4667090, at *4 (N.D. Cal. 2008). Assessing the fair settlement value of class members' claims therefore requires the Court to assess the complexity, delay, risk, and expense associated with prosecuting those claims through a final judgment and discount the potential recovery accordingly).

Apart from VISA's motions to dismiss, the risk of non-recovery for class members has yet to be fully exposed in this matter. As discussed in the prior section, ultimate issues such as whether Zipcar qualified as a rental car had yet to be argued before the Court. VISA's motions also demonstrated a likelihood of VISA arguing that the structure of Zipcar transactions prevented Plaintiff and class members from triggering the Benefit coverage, or that Plaintiff did not satisfy certain requirements to assert a claim under the Benefit agreement. These arguments carried appreciable risks and must be taken into account in valuing the Class Member's claims.

Significantly, even after a successful liability phase of trail, Class Members would still

11

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

bear the risk and expense associated with the damages phase. Because it is unknown how many of the class members timely provided VISA with all the documentation required to satisfy VISA's Benefit claims requirements, class members would have had to come forward to individually establish their membership in the class and the amount of their compensable claim. *See Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 334 (2004) (recognizing the need in certain class cases for each member to come forward and individually establish eligibility and damages); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 299 (C.D. Cal. 2008) (citing Sav-On). A settlement that allows for class members to recover through a streamlined claims process rather than through individual jury or administrative proceedings is far more convenient for class members.

### 3. The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs believe class certification was achievable even if contested, it is possible the Court may have decided that determining whether class members satisfied VISA's benefit claims requirements gave rise to individual issues fatal to class certification. Out-of-state claimants bore even greater risks of finding themselves excluded from the UCL class and thus unable to recover anything—let alone 100% of their loss—through this litigation. Others class members included in the settlement class, may have been excluded under arguments relating to the varying statutes of limitations, whereas as the settlement class includes all claims without regard to time or limitations.

### 4. The Amount Offered In Settlement

The First three *Hanlon* Factors give the Court a perspective from which to assess the fourth and most important factor: the amount offered by the settlement. A review of the compensation offered by the settlement negotiated by Class Counsel in this case shows it provides class members with excellent value—indeed, it provides for 100% of the claim each Class Member would have been paid had VISA allowed claims for Zipcar rentals in the first place. They are

12
3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

1 placed in exactly the same position had the Benefit been honored.

2 The settlement provides for these recoveries without the risk of a liability phase of trial. It also provides for these recoveries without the need for Class Members to appear for a damage phase of trial (either before a second jury or appointed referee) and demonstrate their membership in the class and amount of compensable damages. The settlement allows Class Members to forgo that process—and recover 100% of their loss—by simply providing their most current contact info and signing a pre-printed attestation that he or she submitted a claim under the Benefit and were not reimbursed by another source. In addition, unlike many class actions, where administrative costs and attorneys' fees are paid out of class members' recovery, class members here are receiving the full benefit of their legal representation and a streamlined claims process in addition to their cash reimbursements.

The proposed settlement thus offers fair, adequate, and reasonable compensation for all Class Member claims and does so in a way rationally related to the strength of their claims. In light of the certain substantial recoveries provided by the settlement, there is little to no upside to continued litigation with all its attendant risk, complexity, delay, and expenses. The class's interests are instead best served by approving and implementing the settlement now before the Court.

### 5. The Extent of Discovery Completed And the Stage of Proceedings

The Fifth *Hanlon* Factor exists to ensure that the amount of discovery and extent of litigation was sufficient to allow Plaintiff's counsel to intelligently weigh the strength and potential value of class members' claims prior to negotiating their settlement. *See Rodriguez*, 563 F.3d at 967. Although no formal discovery was conducted, the parties did exchange information pursuant to the initial disclosure requirements, and VISA further provided Plaintiff with vital information pertaining to the legitimacy and scope of Plaintiff's claims, including screen shots of class member's claim files, and information describing the criteria used to identify Class Members. *See* Marshall Preliminary Approval Decl. ¶¶ 4, 5; *see also Dunleavy v. Nadler* (*In re*

13

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

*Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class actions settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citation omitted). This sharing of information ensured sophisticated and meaningful settlement negotiations, which were conducted over several months, including a face-to-face mediation with members of VISA's business and claims team, as well as representatives of the insurer who administers the Benefit. See Marshall Preliminary Approval Decl. ¶¶ 2-5, 7, 8. In short, the parties were fully informed of all relevant facts at the time a settlement was reached.

### 6. The Experience And Views Of Counsel

Class Counsel recommends this settlement without hesitation as in the best interests of the Class he is appointed to represent. See *Gribble v. Cool Transps. Inc.*, 2008 WL 115560, *26 (C.D. Cal. 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). Class Counsel has specialized in class actions for nearly 17 years and has extensive experience in consumer related class cases. *See* Marshall Preliminary Approval Decl. ¶ 12. The monetary payments offered to individual class members is as favorable as Class Counsel has seen in any class case, providing Class Members with 100% of their loss, or the same recovery they could expect after a successful verdict, but without any of the risk and delay associated with reaching that point. Seldom does a class action settle for 100% of damages. In addition, the claims process is very consumer friendly, providing every incentive for Class Members to participate in the settlement and offering a much easier process than if a formal damages phase of trial were required.

### 7. The Presence Of A Governmental Participant

There is no governmental entity involved in this litigation. However, the United States Attorney general, the 50 state attorney generals, and the attorney general of the District of Columbia were all notified of the proposed settlement pursuant to the Class Action Fairness Act.

*See* 28 U.S.C. § 1715. VISA will submit a declaration prior to its response deadline attesting to the CAFA notice. None of these state or federal officials raised any objection or concern regarding the settlement.

### 8. The Reaction Of The Class Members To The Proposed Settlement

The final *Hanlon* Factor is concerned with class member's reaction upon learning of the proposed settlement and their opportunity to comment or object. Pursuant to the Court's preliminary approval order, VISA identified and mailed and/or emailed a Notice of Settlement and Claim Form to 266 Class Members. *See* Marshall Final Approval Decl., ¶ 5. Of those 266 class members, to date at least 100 have submitted claims forms with over three months left in the claims process, or nearly 40%. *See id*. ¶ 8. Moreover, the reaction to the class has been very positive, with no class members making an objection and none requesting exclusion, and many expressing gratitude. *See id* ¶ 10. The fact that there are no objecting class members and no members seeking to opt-out speaks well of the proposed settlement, which is to be expected when the available recovery is 100% of each class member's loss. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 539 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Garner*, 2010 U.S. Dist. LEXIS 49477 at *38 ("[T]he Court may appropriately infer that a class action settlement is fair, adequate , and reasonable when few class members object to it.") (internal quotations marks omitted).

When the interest and intent to participate have been shown by so many this early in the claims process, and in light of the rest of the *Hanlon* Factors, it is clear that the proposed settlement should be approved as a fair, adequate, and reasonable resolution to the litigation.

15

3:13-cv5125-CRB
PLAINTIFF'S MOT. FOR FINAL APPROVAL OF CLASS ACTION

## IV. CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant final approval of the proposed settlement and enter the Proposed Final Order and Judgment submitted herewith.

DATED: March 6, 2015

**MARSHALL LAW FIRM**

By: */s/ Charles D. Marshall*  .
       Charles D. Marshall

Attorney for Plaintiff RON DAVIS and the CLASS

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted in the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 6, 2015

                                        **MARSHALL LAW FIRM**

                                        By: */s/ Charles D. Marshall* .
                                                  Charles D. Marshall

                                        Attorney for Plaintiff RON DAVIS